## THURSTON *v.* WOLFBOROUGH BANK.

In order to sustain an action upon a bank bill, promising payment upon demand, there must be a demand of payment, or circumstances must exist excusing a demand, although the bill is not made payable at any particular place. There is a material difference, in this respect, between a promissory note, and a bank bill issued for the purpose of being circulated as money or its representative.

The statute of limitations, therefore, does not commence running upon a bank bill immediately upon its being issued.

If the bank closes its doors, and has no place of business, a demand is not necessary in order to sustain an action upon its bills. But that is not equivalent to such a demand and refusal as that the statute of limitations will begin to run from the time when it thus closes its doors.

ASSUMPSIT, for money had and received. Writ dated August 5, 1845.

The plaintiff specified, as the foundation of his suit, sundry bank bills, of different denominations and dates, between July 10, 1837, and October 1, 1838, amounting in the whole to $231, and purporting to have been issued by said bank.

The defendants pleaded the general issue, and gave notice, by a brief statement, that they should rely upon the statute of limitations.

The evidence tended to prove that one Cyrus B. Bean, some time in the summer of 1844, received from his brother, Joseph Bean, the bills in question, with information that they belonged to this plaintiff, and a request that he would present them for payment, and demand the specie for them ; that he went soon after for that purpose, and finding the banking-house closed, and the cashier gone to Ohio, he went into the store of Daniel Pickering, near to the bank, who was a stockholder (and who had been president of the bank up to 1843, when his term of office expired, since which time no president or directors had been appointed), and there, between the hours of two and three o'clock P. M., he presented said bills to said Pickering, and demanded payment in specie, which Pickering refused; that the bank had issued no bills since 1839, and the banking-house had been closed for most of the time since, and had redeemed no bills since 1841, and that said Cyrus told Pickering that the bills belonged to the plaintiff, and were presented for him.

To the maintenance of this action, upon the foregoing evidence, the defendant objected, because no sufficient demand was proved, the demand not being made at the banking-house ; and because the evidence showed that the bank had issued no bills since March 2, 1839, more than six years prior to this suit.

But the court overruled the objections, and the jury, having returned a verdict for the plaintiff, the defendants moved for a new trial.

*Fogg & Vaughan*, for the plaintiff.

*Batchelder*, for the defendants.

PARKER, C. J. There are cases which hold that an action may be commenced upon a bank note, payable on demand, but which is not payable at any particular place,

without any prior demand of payment. 18 Johns. 493, *Bank of Niagara* v. *McCracken ;* 3 Wend. 1, *Haxtun* v. *Bishop ;* 18 Me. 241, *Bryant* v. *Damariscotta Bank ;* 1 U. S. Dig. 395, pl. 28, citing 1 South. 382, *State Bank* v. *Van Horn.*

There are other cases which militate somewhat with those just cited, and we cannot concur in the opinion. 19 Johns. 323, *Spencer,* C. J., *Jefferson Co. Bank* v. *Chapin ;* 16 Mass. 68, 69, *Wilde,* J., *Hinsdale* v. *Larned.*

We do not perceive any sound principle on which to distinguish bank notes, payable on demand, generally, from those payable on demand at a particular place, in regard to this question ; and very cogent reasons exist why it should not be held that an action upon them accrues to the holder as soon as they are issued, without any request for payment, unless there is something to excuse the holder from making such request.

Promissory notes payable on demand are, by the import of their terms, payable upon request. But long settled construction, regarding them as evidence that money is due from the promisor to the holder, makes them payable generally as if the note had contained a promise to pay a sum of money to the holder, without anything superadded. It is held that a suit is a sufficient demand, which implies the necessity of a demand, and then negatives the necessity of any such demand by sustaining a suit which is supposed to be founded upon a demand, when none has in fact been made. The writ is in no sense the demand upon which the suit is founded. This construction makes it the duty of the maker to seek the holder, and make payment without any demand, and charges him with neglect if he fail so to do.

But this rule in relation to promissory notes, which gives to the promise a signification not entirely in accordance with the terms of the instrument, does not necessarily furnish the principle in relation to bank notes.

Thurston *v.* Wolfborough Bank.

There is a material difference between a promissory note and a bank·note. Banks are usually chartered for the ·purpose of issuing promises, which are intended to be used as currency, and to pass from hand to hand as money or its representative. Under such circumstances, when the bank issues its promises to pay certain sums to the bearer, on demand, it cannot fairly be understood that the corporation assumes the duty of seeking all the holders of its notes, and tendering payment without any demand, or that it is in default for not doing it. It is not always possible, in the case of promissory notes, for the promisor to find the holder and tender payment. It would be quite impossible in the case of bank notes. Banks have usually a place of business, and the usage is to pay on presentment at that place, whether or not the note specifies that as the place of payment. Such is doubtless the understanding of the community. Banks are in fault then when they refuse to pay upon such presentment, and not before.

Were it otherwise, actions on bank notes, like those on promissory notes payable on demand, would be barred by the statute of limitations, on the expiration of six years from the time when they were dated, or last issued. Such a principle would astonish the community. One hardly thinks of looking at the date of a bank note, if it appear to be genuine. Such would be the consequence, however, of holding that there was a cause of action, without any demand, immediately on the issue of the note.

But although the general principle requires a demand, a bank may so conduct as to waive any right to insist on a demand; and the defendants have done so here. When they shut up their bank and had no place of business, they precluded a demand in the usual way; and the holders of their bills were not bound to seek the officers of the bank elsewhere, for the purpose of demanding payment. 16 East 112, *Howe* v. *Bowes.*

They cannot, however, avail themselves of this to avoid payment by means of the statute of limitations. Although this released the holder from the necessity of making a demand, which would have been useless — there being no person at their place of business upon whom to make the demand — it did not release them from their promise to pay. Nor did it show such a refusal to pay, in relation to any particular holder, or in relation to all the holders of bills, that a cause of action immediately arose upon the closing of the bank, without any actual demand or option on the part of the holders, who were not bound to take notice that the bank had shut its doors. Nor, if it were shown that they knew that fact, are they to be regarded as in default, if they did not immediately act upon that knowledge. The bank having issued its promises, payable on demand, it was at the pleasure of the holders when the demand should be made, and their right of action commence. The bank may so act as to waive a right to insist upon a demand, without depriving the holders of their right to determine the time when they will seek payment, by asserting a right of action.

*Judgment on the verdict.*